**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
_____

**JAGPREET JAGPREET SINGH**

      _Petitioner_

   v.

                                  **(Emergency Application)**

**JOHN TSOUKARIS,**
     **NJ Director, Enforcement & Removal Operations,**    **A No. 245714163**
     **U.S. Immigration and Customs Enforcement;**

**TODD LYONS, Acting Director, U.S. Immigration**
     **and Customs Enforcement;**

**KRISTI NOEM, Secretary of the U.S. Department**
     **of Homeland Security; and**

**PAMELA BONDI, Attorney General of the United States,**

**LUIS SOTO, Warden, Delaney Hall, Newark, NJ**

      _Respondents._
_____


**PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. §
2241) AND EMERGENCY ORDER TO SHOW CAUSE &
TEMPORARY RESTRAINING ORDER**


1. JAGPREET JAGPREET SINGH ("Petitioner"), by counsel, respectfully petitions for a writ

   of habeas corpus pursuant to 28 U.S.C. § 2241 and moves for emergency relief by Order

   to Show Cause and Temporary Restraining Order.

2. This petition is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal.

3. Petitioner has not had an opportunity to interview with counsel. Since Respondents have not yet

   provided Petitioner with access to any recent detention documents, nor the opportunity to review

   them with counsel, the factual allegations here  are pleaded upon information and belief, except

   where otherwise stated. Petitioner reserves the right to amend or supplement this Petition as

more facts become available.

4. Because of very limited time constraints, we are making an argument based on a habeas corpus petition originally filed with the New York District Courts. Although we think the laws are not that different, we ask for the courts' indulgence because our time constraints are very tight, and we need to file this urgent petition before our client is transferred to a faraway state. Regardless, we rely heavily on New Jersey federal case law and cite New York federal law as very persuasive authority.

## THE FACTS

5. **JAGPREET JAGPREET SINGH is a 24-year-old Indian man, a resident of Nassau County in Long Island, who was illegally detained and arrested by ICE on February 14, 2026.**

6. **Petitioner was driving home from work and had committed no crime nor any traffic violation when he was stopped by ICE agents, taken from his car, searched, and arrested.**

7. **ICE officers informed him that he was being placed under arrest.**

8. **ICE agents had no search warrant. Upon information and belief he had been racially profiled.**

9. **He has a fixed address at 132 Myers Avenue, Hicksville, NY 11801.**

10. **Arrived January 3, 2024, through the southern border in California, and has lived in New York since his arrival in the US.**

11. **Currently, he is at Delaney Hall in Newark NY , of the US Bureau of Prisons.**

12. **When they initially stopped him to question him, they did not know his name, nor did they present the warrant.**

13. **He just happened to be a random person driving a car, and they stopped him, interrogated him, detained him, searched him, and arrested him.**

14. **ICE agents did not check to see if he had a DHS administrative or judicial warrant. And even**

**if they did, he does not have one.**

15. **He had not committed a crime, and they did not have any articulable suspicion of criminality underfoot, or any legal reason to stop and detain him, and certainly not probable cause to arrest him.**

16. **He was transported from Long Island, eventually to New Jersey after his arrest.**

17. **Currently, he is detained at the Delaney Hall Detention facility in Newark, NJ.**

18. **He was not permitted to make any phone calls, and he did not even know where he was being taken.**

19. **ICE arrested him without a warrant and is incarcerating him indefinitely without an individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.**

20. **ICE also arrested him without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the *minimum* requisites for a warrantless arrest by ICE under INA Section 287 (a)( 2) 8 USC 1357 (a)(2).**

21. **When ICE agents later fingerprinted him and booked him at DHS processing offices, they did not follow statutorily and constitutionally guaranteed procedures for due process.**

22. That is why Petitioner now comes to this Honorable Court seeking assistance.

23. Petitioner, through this habeas, seeks immediate relief including:

> (i)  an order prohibiting his transfer,
>
> (ii)  an order compelling Respondents to produce him before the Court,
>
> (iii) an order compelling production of the DHS administrative record (A-file) and all arrest/custody documentation, and
>
> (iv)  an order requiring a lawful custody determination within 24–48 hours or,

3

alternatively, Petitioner's immediate release.

## **Legal Background**

DISTRICT OF NEW JERSEY AUTHORITY SUPPORTS IMMEDIATE RELEASE—RATHER THAN A BOND
HEARING—WHERE DHS MISAPPLIES § 1225(b)(2) IN INTERIOR ARREST CASES

During 2025 and 2026, the District of New Jersey developed a consistent and forceful body of habeas jurisprudence

addressing interior ICE arrests, warrantless detentions, and the Government's expanded reliance on 8 U.S.C. § 1225(b)(2)

to impose categorical, "discretion-free" detention. These decisions do not treat misclassification under § 1225(b)(2) as a

minor statutory disagreement. Rather, they recognize that when § 1225(b)(2) is invoked against noncitizens who are not

seeking admission but are instead long-present residents arrested within the interior of the United States, detention is ultra

vires. When that misclassification is coupled with the denial of contemporaneous individualized custody review, courts in

this District have ordered immediate release and, in multiple cases, have enjoined re-detention under the same statutory

theory.

The doctrinal foundation of this line of authority begins with the statutory text itself. Section 1225(b)(2)(A) applies only

to individuals "seeking admission." The District of New Jersey has repeatedly emphasized that this phrase carries

operative force and cannot be read out of the statute. In Zumba v. Bondi, No. 25-14626 (KSH), 2025 WL 2753496 (D.N.J.

Sept. 26, 2025), the petitioner had lived in the United States for more than twenty years before being arrested within the

interior and detained under § 1225(b)(2). The court held that the statute's plain language foreclosed the Government's

position. As the court explained, "Section 1225(b)(2)(A) applies to an alien who is 'seeking admission' into the United

States. Petitioner, who has resided in the United States for over twenty years and was arrested within the interior, was not

seeking admission at the time of her arrest." Zumba, 2025 WL 2753496, at 8. The court rejected DHS's categorical

theory, explaining that it "would effectively read the 'seeking admission' requirement out of the statute," a construction

incompatible with the INA's text and structure. Id. at 8–9.

Having determined that § 1225(b)(2) did not apply, the court held that § 1226(a)—which preserves discretionary custody

review and bond authority—governs detention of long-present individuals arrested in the interior. Id. at 9. The remedy

followed inexorably from that statutory conclusion. The court held, "Because Petitioner's detention under § 1225(b)(2) is

not authorized by the statute and deprives her of the bond process Congress preserved under § 1226(a), her continued

detention violates the Immigration and Nationality Act and the Due Process Clause." Id. at 11. The writ was granted, release was ordered within twenty-four hours, and re-detention under § 1225 was permanently enjoined to ensure the writ's effectiveness.

This reasoning was reaffirmed in Bethancourt Soto v. Soto, No. 25-16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025). There, the court again rejected the Government's attempt to classify a long-present interior arrestee under § 1225(b)(2), holding, "The plain text of § 1225(b)(2)(A) limits its application to aliens who are 'seeking admission.' Petitioner was apprehended inside the United States and was not seeking admission at a port of entry. Accordingly, § 1225(b)(2) does not govern his detention." Id. at 6. The court emphasized the structural deprivation that followed from misclassification, explaining that "[b]y classifying Petitioner under § 1225(b)(2), Respondents have deprived him of the discretionary custody determination and bond review Congress expressly provided under § 1226(a)." Id. at 8. It concluded that such detention was "inconsistent with the statutory scheme and raises serious due process concerns." Id. at 8–9.

The same principle was reinforced in Bethancourt Soto v. Soto, No. 2:25-cv-17122 (D.N.J. Jan. 23, 2026), and in Villacorta Perlera v. Tsoukaris, No. 2:25-cv-17122 (D.N.J. Jan. 23, 2026), where the court again held that § 1226(a), not § 1225(b)(2), governs detention of interior arrestees and granted habeas relief.

The symmetry of this jurisprudence continued in Contreras Maldonado v. Cabezas, No. 25-13004 (JKS), 2025 WL 2985256 (D.N.J. Oct. 23, 2025), where the court reiterated, "Section 1225(b)(2) cannot be used to impose mandatory detention on individuals who were not seeking admission at the time of their apprehension. Petitioner was arrested within the United States and therefore falls within the framework of § 1226(a), not § 1225(b)(2)." Id. at 5. The court underscored the structural nature of the defect, holding that "Detention under an inapplicable statutory provision deprives Petitioner of the discretionary bond determination Congress preserved. Such detention is inconsistent with the INA and cannot be sustained." Id. at 6. As in Zumba, release was ordered within twenty-four hours, and re-detention under § 1225 was enjoined. Id. at 7.

In Penaloza Penalosa v. Bondi, No. 25-18843 (JKS) (D.N.J. Jan. 23, 2026), the court confronted not only statutory misclassification but also serious front-end procedural deficiencies arising from a warrantless arrest and the denial of meaningful access to counsel and individualized review. In granting the writ, the court held, "Petitioner's detention pursuant to § 1225(b)(2), combined with the absence of meaningful access to counsel and individualized custody review,

renders his continued detention unlawful." Slip op. at 9. The court further explained, "A bond hearing conducted after detention imposed under an inapplicable statutory provision does not cure the illegality of that detention." Id. at 10. Release was ordered, re-detention under § 1225 was enjoined, and the court retained jurisdiction to prevent recurrence. These District of New Jersey decisions are firmly grounded in Supreme Court doctrine governing executive detention and habeas relief. In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court declared that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects." Id. at 690. The Court further emphasized that "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." Id. at 687. Where detention exceeds statutory authorization, habeas courts must order release. Id. at 699–700.

In Demore v. Kim, 538 U.S. 510 (2003), the Court reaffirmed that § 2241 proceedings "remain available as a forum for statutory and constitutional challenges to detention." Id. at 516–17. And in Jennings v. Rodriguez, 583 U.S. 513 (2018), the Court underscored that "[w]hether a statutory provision authorizes detention must be determined by reference to the language of the statute itself." Id. at 524. The District of New Jersey's decisions follow precisely that command, interpreting § 1225(b)(2) according to its text and refusing to expand it beyond the "seeking admission" limitation.

Third Circuit precedent completes this constitutional arc. In Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011), the court held that executive detention becomes unconstitutional when it is not meaningfully justified, explaining that "[a]t a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing." Id. at 233. In Guerrero-Sanchez v. Warden York County Prison, 905 F.3d 208 (3d Cir. 2018), the court held that due process demands an individualized bond hearing at which the Government bears the burden of justifying continued detention, stating, "The Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Id. at 224. The court emphasized that "[c]ivil detention must be accompanied by adequate procedural protections to ensure that the Government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 223.

The persuasive authority emerging from the Southern and Eastern Districts of New York reinforces this conclusion. In Lopez Benitez v. Francis, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025), the court granted habeas relief. In Gonzalez v.

Joyce, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025), the court described courthouse-arrest detention as "arbitrary detention" with "no process at all." In Samb v. Joyce, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025), the court condemned "seemingly random and arbitrary detentions." In Barco Mercado v. Francis, 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025), the court emphasized that release may be necessary to render habeas relief effective.

The Eastern District of New York reached the same conclusion in Hyppolite v. Noem, No. 25 Civ. 4303 (E.D.N.Y. Oct. 6, 2025), as well as in Gopie v. Lyons, No. 25 Civ. 5229 (E.D.N.Y. Nov. 14, 2025), and Pesantez Castro v. Maldonado, No. 25 Civ. 6844 (E.D.N.Y. Dec. 23, 2025).

Taken together, the doctrinal arc is complete. Under the plain text of § 1225(b)(2), the repeated holdings of the District of New Jersey, Supreme Court habeas doctrine, binding Third Circuit due process precedent, and persuasive SDNY and EDNY authority, detention of long-present interior arrestees under § 1225(b)(2) is ultra vires, structurally defective, and constitutionally infirm. The proper remedy—consistently ordered in this District—is immediate release, not remand for bond.

24.  Similarly, In 2025 through 2026, federal judges in the Southern and Eastern Districts of New York repeatedly granted immigration habeas relief[1]—and, critically, **ordered immediate release**—where DHS/ICE arrested and detained noncitizens without lawful statutory authority, without any contemporaneous individualized custody determination, and/or in violation of the Constitution and the agency's own mandatory procedures. For example, Judge Subramanian granted the writ and ordered release where ICE seized a long-time New York resident without a valid statutory basis and without constitutionally adequate process, emphasizing: "**None of this had to happen. All of it is illegal.**" Diallo v. Joyce, No. 25-CV-9909 (AS), slip op. at 1 (S.D.N.Y. Dec. 23, 2025). Judge Torres likewise granted habeas and ordered release where ICE's courthouse-arrest practice operated as "arbitrary detention" with "no process at all," based on allegations of a May-2025 policy to "indiscriminately arrest[] noncitizens who attend immigration court hearings," and where the record reflected no individualized dangerousness/flight assessment. Gonzalez v.

---

[1] See Appendices A & B cited by Judge Kaplan in Barco Mercado v. Francis, No. 1:25-cv-06582 (2025 WL (S.D.N.Y. Nov. 26, 2025) of a running tally in November 2025 of granted and denied habeas petitions based on DHS and ICE violations.

*Joyce*, No. 25 Civ. 8250 (AT), 2025 WL 2961626, at *2–*4 (S.D.N.Y. Oct. 19, 2025). And Judge

Engelmaier granted the writ and ordered forthwith release where ICE revoked a prior release/order of

supervision without providing the minimally required due-process protections (notice and a prompt

interview), holding that ICE's failure to follow the governing procedural safeguards violated the Due

Process Clause and rendered the petitioner "in custody in violation of the Constitution." *Funes Gamez v.*

*Francis*, 25 Civ. 7429 (PAE), slip op. at 43, 48–49 (S.D.N.Y. Nov. 24, 2025). These decisions align

with—and expressly collect—a broader 2025 SDNY line ordering release for constitutional/process

defects or ultra vires detention, including *Valdez v. Joyce*, No. 25 Civ. 4627 (GBD), 2025 WL 1707737

(S.D.N.Y. June 18, 2025); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL

1927931(S.D.N.Y. July 13, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588

(S.D.N.Y. August 13, 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19,

2025); and related orders enforcing ICE's obligation to provide real, contemporaneous process before

depriving a person of liberty. In the Southern District of New York, courts likewise granted writs and

ordered immediate release where ICE attempted to invoke § 1225 against long-time residents not "seeking

admission," and where the record reflected service/processing defects (including post-seizure paperwork

and no contemporaneous custody determination), with Judge Azrack granting the writ and ordering

immediate release, and specifically flagging the absence of contemporaneous service of the NTA/I-200

and the absence of an individualized custody determination as independent bases supporting release.

*Pessantez Castro v. Maldonado* No. 25-CV-6844 (JMA), slip op. at 2 (E.D.N.Y. Dec. 23, 2025); see also

*Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025).

25. These 2025 habeas rulings also arose against a widely reported escalation in enforcement tactics under the

current administration—especially courthouse and check-in arrests and aggressive arrest-quota pressure—

raising systemic due-process concerns that help contextualize why immediate judicial intervention is

sometimes the only meaningful remedy. Reuters reported ICE courthouse arrests in multiple cities

(including New York) that could funnel people into expedited removal, even where immigration judges had just taken case actions that would ordinarily permit them to remain at liberty pending proceedings. Reuters also reported that the White House pressed ICE to sharply increase daily arrests (including discussion of targets such as 3,000/day), prompting tactical shifts and criticism that enforcement was increasingly indiscriminate and fear-inducing. And reporting has described a July 2025 effort to expand mandatory-detention positions and deny bond hearings for large categories of people who entered without inspection—policies that, as New York habeas courts recognized, can render administrative "remedies" illusory when the government's legal position is that no bond authority exists. For New York–specific contemporaneous context on courthouse enforcement patterns, New York Magazine reported extensively on the courthouse dragnet dynamic at 26 Federal Plaza and NYC immigration court facilities during this period..

26. Taken together, these District of New Jersey decisions and the other decisions in the Southern and Eastern Districts of New York. are powerful authorities for at least four propositions central to Petitioner's claims in this action.

27. First, where DHS/ICE detains a noncitizen arrested in the interior under the expanded "mandatory detention" theory of § 1225(b)(2), federal courts properly scrutinize whether the statutory preconditions of § 1225(b)(2) are satisfied (including whether the person is "seeking admission" in the relevant sense), and where they are not, continued detention under § 1225(b)(2) is unlawful.

28. Second, in that posture, § 1226(a) provides the operative detention framework for noncitizens already present in the United States pending removal proceedings, which necessarily entails discretion, bond authority, and individualized custody review mechanisms that § 1225(b)(2) purports to eliminate.

29. Third, when the Government's detention theory itself forecloses any meaningful administrative remedy (because the Government asserts "no bond authority" and "mandatory detention"), habeas relief is not satisfied by directing Petitioner to pursue an illusory custody review; rather, release is an available and

appropriate remedy to terminate unlawful custody that is continuing day-by-day.

30. Fourth, these decisions confirm that injunctive relief barring re-detention under § 1225(b)(2) may be necessary to make the writ effective and prevent the Government from perpetuating the same unlawful custody authority after the court has already adjudicated the statutory defect. Supplemental authority supporting this Court's jurisdiction and the need to prevent transfer gamesmanship.

31. Petitioner respectfully submits that these decisions reinforce that the habeas remedy in this posture is not merely a future or discretionary agency process, but effective relief terminating unlawful detention now.

### The Case

32. This is an emergency habeas case about a basic constitutional and statutory question: can the government detain and arrest Petitioner without presenting a valid arrest warrant or complying with statutory or constitutional safeguards?

33. Upon information and belief, DHS will produce an arrest warrant before this Court and claim it was a valid warrant that Petitioner was arrested on, even though it was created after he was arrested and was never issued or signed off by anyone in the chain of command at ICE, and never shown to him because it didn't exist.

34. Civil immigration detention is a profound deprivation of liberty, and due process demands meaningful safeguards at the moment the government chooses to arrest Petitioner.

35. Courts in this District repeatedly grant habeas relief where ICE detains people without making the individualized assessment that § 1226(a) and the implementing regulations require, and where ICE attempts to justify detention after the fact rather than through contemporaneous process. See, e.g., *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (Ho, J.) (granting habeas relief; explaining that due process must constrain the government's wide discretion to detain under § 1226(a)); *Barco Mercado v. Francis*, No. 1:25-cv-06582 (2025 WL (S.D.N.Y. Nov. 26, 2025) granting petition for writ of habeas corpus ordering immediate release.) (Judge Lewis A.

Kaplan); *Kelly v. Almodovar*, No. 25 Civ. 6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) (ordering immediate release where ICE's process was defective and stressing that post-hoc "re-determination" is not a substitute for initial deliberative custody decision); *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737 (S.D.N.Y. June 18, 2025) (granting habeas; ordering immediate release in a re-detention/no-process scenario); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (granting habeas; ordering immediate release); *Gonzalez v. Joyce,* No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025) (granting relief and ordering immediate release).

36. Petitioner therefore seeks immediate judicial intervention to prevent transfer, compel disclosure of vital documents, require production of the Petitioner before the Court, and enforce the statutory and constitutional requirement of a prompt, contemporaneous individualized custody determination by DHS and in the absence of that, order his immediate release.

## Jurisdiction And Venue

37. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation.

38. The venue is proper in the District of New Jersey because the Petitioner was seized in New York, was re-detained, and processed at ICE facilities within this District, and is currently being held at Delaney Hall, Newark, NJ, Respondents direct, control, and administer Petitioner's detention and transfer decisions in and from this District.

39. This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability

40. to order effective habeas relief.

## The Parties

41. **Petitioner JAGPREET JAGPREET SINGH is a resident of New York.**

11

42. Respondent John Tsoukaris is the NJ Director of Enforcement & Removal Operations of ICE and is a legal custodian of Petitioner.

43. Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and practices.

44. Respondent Kristi Noem is the Secretary of the Department of Homeland Security and is responsible for DHS policies and enforcement practices affecting detention.

45. Respondent Pamela Bondi is the Attorney General of the United States and is sued in her official capacity in connection with the federal custody at issue.

46. Luis Soto is the Petitioner's direct custodian as the Warden of Delaney Hall, Newark, NJ.


**The Facts**

47. Petitioner was recently arrested by ICE.

48. The officers did not present a warrant and did not advise the Petitioner of his immigration rights.

49. He is currently still at Delaney Hall.

50. ICE officers arrested him without notice, without probable cause, without a custody determination, without an evaluation of flight risk or dangerousness, without giving him an opportunity to be heard, all in violation of the INA and of his Fifth Amendment due process rights.

51. Upon information and belief, and as is current standard practice in many arrests by ICE, Petitioner has detained without any meaningful opportunity to request release, and without any contemporaneous individualized custody determination as required by the detention statutes and implementing regulations.

52. Petitioner's warrantless arrest and continued detention are arbitrary and unlawful, effected without due process of law and in violation of the Fourth and Fifth Amendments and the immigration detention statutes and regulations.

## ARGUMENT

**Petitioner's Warrantless Arrest and Detention Without a Contemporaneous, Individualized Custody Determination Violates the Fourth Amendment, the Fifth Amendment, and the Immigration and Nationality Act (INA).**

53. The Fifth Amendment's Due Process Clause prohibits the government from depriving any person of liberty without due process of law. Freedom from physical restraint lies at the very core of the liberty protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection extends to citizens and noncitizens alike, including individuals in immigration custody, regardless of their manner of entry or procedural posture. *Id.* As the Supreme Court has repeatedly emphasized, an essential principle of due process is that any deprivation of liberty must be preceded by notice and an opportunity to be heard, appropriate to the nature of the case. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Where detention flows from executive action unaccompanied by the ordinary safeguards of the criminal process, habeas courts are required to engage in *the most searching review of the legality of that detention. Boumediene v. Bush,* 553 U.S. 723, 783 (2008).

54. The Supreme Court has repeatedly emphasized that immigration detention, even when authorized by statute, remains subject to the Due Process Clause. In *Zadvydas v. Davis*, the Court held that civil immigration detention must bear a reasonable relation to its purported purpose and that statutes should not be construed to authorize indefinite detention absent clear congressional intent, precisely because such detention would raise serious constitutional concerns. 533 U.S. 678, 690–701 (2001). The Court reaffirmed that principle in *Demore v .Kim*, explaining that even mandatory detention provisions are constitutionally permissible only when they are limited in duration and accompanied by sufficient procedural safeguards. 538 U.S. 510, 528–31 (2003). Most recently, in *Jennings v. Rodriguez,* while rejecting a statutory bond-hearing requirement as a matter of interpretation, the Court made explicit that constitutional challenges to detention under § 1225(b) remain fully cognizable in habeas and must be

addressed on their merits. 583 U.S. 131, 147–49 (2018).

55. Whether the government purports to detain Petitioner under INA § 1225(b) or § 1226, the constitutional inquiry remains the same. The government may not impose civil detention without a legitimate governmental purpose and without procedures sufficient to mitigate the grave risk of erroneous deprivation of liberty. *Zadvydas,* 533 U.S. at 690–91. Detention that is automatic, categorical, or justified solely by immigration status or manner of entry, without any individualized assessment or opportunity to be heard, offends due process. *Id*. Courts in this Circuit have consistently rejected the notion that Congress's plenary power over immigration permits detention without meaningful process, even where the statute uses mandatory language. *Wang v. Ashcroft*, 320 F.3d 130, 139–40 (2d Cir. 2003).

56. The government will likely assert that Petitioner's detention arises under the Immigration and Nationality Act, specifically 8 U.S.C. § 1225. Section 1225(a) defines who is deemed an "applicant for admission," a legal classification that attaches at the moment an individual is encountered by immigration officials and is alleged to be seeking entry into the United States.

57. Section 1225(b) then prescribes certain procedures that follow an inspection determination, including detention during expedited removal proceedings under § 1225(b)(1) or pending completion of full removal proceedings under § 1225(b)(2).

58. On its face, however, § 1225 is an inspection and processing statute. It governs how admissibility determinations are made; it does not operate as a freestanding grant of unreviewable detention authority divorced from constitutional limits. Historically, § 1225 was enacted to regulate the inspection function at the border or its functional equivalent. Detention under the immigration laws was understood as ancillary to removal proceedings and subject to parole, discretion, and judicial review.

59. The modern practice of treating § 1225(b) as an automatic and self-executing detention

14

mandate represents a sharp departure from that historical understanding. As the Supreme

Court recognized in *Shaughnessyv. United States ex rel. Mezei*, even in the context of

exclusion, detention authority has never been absolute and has always been subject to

constitutional scrutiny where confinement becomes prolonged or arbitrary. 345 U.S. 206,

212–16 (1953).

60.  Federal courts have consistently rejected the government's attempt to treat §1225(b) as a

categorical detention license. These Courts  has made clear that "[f]reedom from

imprisonment—from government custody, detention, or other forms of physical restraint—

lies at the heart of the liberty that the Due Process Clause protects." Velasco Lopez v. Decker,

978 F.3d 842, 851 (2d Cir. 2020) (quoting Zadvydas). In Velasco Lopez, the court

emphasized that civil detention without a meaningful opportunity to obtain release violates

due process and that the government bears the burden of justifying continued confinement. Id.

at 852–54. Although Velasco Lopez arose under § 1226, its constitutional reasoning applies

with equal force to detention under § 1225, because "the constitutional problem is the same

prolonged detention without adequate procedural protections." Id. at 854.

61.  In other words, DHS cannot collapse the INA's two detention tracks to transform an interior apprehension

into a border-inspection detention regime. Judge Torres applied that same rule in Gonzalez v. Joyce, holding

that the Petitioner was "not subject to mandatory detention as a noncitizen 'seeking admission' … under 8

U.S.C. § 1225, but rather may be subject to detention only on a discretionary basis under § 1226," expressly

relying on Samb v. Joyce, 2025 WL 2398831, at 3 (S.D.N.Y. Aug. 19, 2025).

62.  New York federal courts have applied these principles specifically in the § 1225 context, recognizing that the

statute does not eliminate the requirement of a contemporaneous, individualized custody determination. In

*Lopez-Benitez v. Francis*, Judge Ho held that detention violated due process where the government could not

explain when, how, or by whom the decision to detain was made, and where no individualized assessment

preceded the deprivation of liberty. 2025-cv-5937 (S.D.N.Y. August 8, 2025). The court emphasized that pointing to later administrative proceedings could not cure the initial constitutional defect, because "due process requires notice and an opportunity to be heard at a meaningful time." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

63.  Likewise, in *Barco Mercado v. Frances*, Judge Kaplan granted habeas relief where ICE detained the petitioner first and only later attempted to justify that detention through administrative process. The court found it dispositive that ICE "did not conduct a custody determination until *after* arresting Petitioner," holding that post-hoc rationalizations could not substitute for constitutionally required procedures. 2025-cv-6582 (S.D.N.Y. November 26, 2025). The court ordered release, not remand, recognizing that the constitutional violation was ongoing and could not be remedied by further delay. *Id*. at 8.

64.  Other New York federal court decisions have echoed this reasoning, holding that detention under § 1225(b) without meaningful procedural protections creates an unacceptably high risk of an erroneous deprivation of liberty. In *Gonzalez v. Joyce*, the court explained that where procedural protections are "almost nonexistent," the Mathews balancing *test* weighs decisively in favor of immediate judicial intervention. 25-cv-8250 (S.D.N.Y. October 19, 2025). The court emphasized that exhaustion is not required where the injury is constitutional and cannot be adequately addressed by an immigration judge or the Board of Immigration Appeals.

65.  In practice, then, the real source of the government's asserted detention power is not § 1225(a) or § 1225(b) as written, but an administrative assumption that classification as an applicant for admission automatically justifies incarceration. That assumption finds no support in the statutory text, in historical practice, or in binding constitutional precedent. Section 1225(b) presupposes a lawful seizure and a valid custody determination; it does

not dispense with them. Where detention is imposed without notice, without an opportunity to be heard, and without an individualized assessment of necessity, the government is not exercising authority granted by Congress but acting ultra vires and in violation of due process. Accordingly, while the government may invoke § 1225(b) as the nominal basis for Petitioner's detention, this Court must look to the substance of what occurred. Where, as here, the deprivation of liberty was imposed without constitutionally sufficient process and continues to this day, habeas relief lies in release. Ordering further administrative proceedings would merely prolong an unlawful confinement and fail to cure the constitutional injury. As courts in this District have repeatedly recognized, "[r]elease—not remand—is the appropriate remedy for unconstitutional immigration detention." Barco Mercado; see also Velasco Lopez, 978 F.3d at 855.

### A. **The Fourth Amendment Applies to Interior Civil Immigration Arrests. Warrantless Arrest Authority Is Narrow and Statutorily Constrained**

66. Civil immigration enforcement does not occur in a constitutional vacuum. Inside the United States, the Fourth Amendment governs seizures, and warrantless arrests must fall within narrow exceptions.

67. Congress likewise limited ICE's warrantless arrest authority in 8 U.S.C. § 1357(a)(2), which requires statutory prerequisites before an officer may arrest without a warrant.

68. ICE arrested him without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the minimum requisites under INA Section 287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

69. When ICE cannot prove those prerequisites, the seizure is invalid. Here, ICE officers did not present any warrant and did not articulate any lawful basis for arresting Petitioner. That is the hallmark of an unreasonable seizure, and it cannot serve as the foundation for lawful civil

detention.

**B. The Fifth Amendment Forbids Arbitrary Civil Detention; § 1226(A) Requires ICE To Make An Individualized Custody Decision *Before Or At* The Moment Liberty Is Taken.**

70. The liberty interest in being free from government custody lies at the heart of due process. Where the government has discretion to detain or release under § 1226(a), due process demands safeguards that ensure discretion is actually exercised and not replaced by automatic detention.

71. In *Lopez Benitez v. Francis*, Judge Ho explained that § 1226(a)'s breadth triggers due-process constraints precisely because the government has wide discretion to decide who to detain. *Lopez Benitez,* 2025 WL 2371588, at *10

72. In *Kelly v. Almodovar*, Judge Torres emphasized that an immigration-judge bond proceeding is a custody "re-determination" and is not a substitute for ICE's obligation to make the initial custody decision through a deliberative process prior to or contemporaneous with the loss of liberty. *Kelly,* 2025 WL 2381591, at 3.

73. Judge Bulsara's decision in the EDNY *Gopie v. Lyons,* No. 25-cv-5229 (SJB) (E.D.N.Y. Nov. 14, 2025) synthesizes and applies this principle. *Gopie* grants habeas relief where ICE failed to make a valid initial custody determination and tried to rely on post-hoc process. *Gopie* holds that due process required ICE to make a custody determination at or before arrest and that the government's after-the-fact approach does not satisfy the statutory and constitutional requirements that constrain discretionary detention. There, the court granted the writ where ICE failed to make a lawful initial custody determination contemporaneous with arrest and attempted to justify detention after the fact.

**C. Judges in This District Have Repeatedly Ordered Immediate Release in Habeas Cases Where ICE Detained Individuals Without Lawful Process or Employed Defective Custody Procedures**

74. In 2025, New York federal courts repeatedly granted habeas relief and ordered immediate release when ICE detained people under discretionary detention authority but failed to provide lawful process or to demonstrate a valid, individualized custody decision.

18

75. In *Gonzalez v. Joyce,* Judge Torres granted the habeas and ordered release in a case involving arrest and detention under challenged practices and reiterated that detention cannot rest on post-hoc rationalizations where the statutory and due-process requirements of discretionary detention are not satisfied. *Gonzalez,* WL 2961626, 2026.

76. In *Tumba Huamani v. Francis*, Judge Liman granted habeas and ordered immediate release, applying the principle that where detention is unlawful, release is the proper remedy. *Tumba Huamani*, 2025 WL 3079014.

77. In *Huang v. Almodovar*, Judge Ho ordered release and addressed recurring defects in ICE detention practices in this line. *Huang*, 2025 WL 3295912.In *Chipantiza-Sisalema v. Francis,* Judge Torres granted habeas and ordered immediate release. Chipantiza-Sisalema, 2025 WL 1927931.

78. These authorities support the same conclusion here: ICE's failure to provide a lawful basis for the initial seizure and to make any contemporaneous individualized custody determination makes the detention unlawful and warrants immediate habeas relief.

### D. The Fourth Amendment Applies to Interior Civil Immigration Arrests. Warrantless Arrest Authority Is Narrow and Statutorily Constrained

79. Civil immigration enforcement does not occur in a constitutional vacuum. Inside the United States, the Fourth Amendment governs seizures, and warrantless arrests must fall within narrow exceptions.

80. Congress likewise limited ICE's warrantless arrest authority in 8 U.S.C. § 1357(a)(2), which requires statutory prerequisites before an officer may arrest without a warrant. ICE arrested him without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the minimum requisites under INA Section 287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

81. When ICE cannot prove those prerequisites, the seizure is invalid. Here, ICE officers did not present any

warrant and did not articulate any lawful basis for arresting Petitioner. That is the hallmark of an

unreasonable seizure, and it cannot serve as the foundation for lawful civil detention.

### E. Immediate Release Is The Proper Remedy; A Belated Bond Hearing Does Not Cure The Constitutional And Statutory Violations

82. As Chief Justice Roberts wrote in *Munaf v. Geren*, 553 U.S. 674, 693 (2008), the typical remedy for unlawful executive detention is release:

> Habeas is at its core a remedy for unlawful executive detention. *Hamdi v. Rumsfeld*, 536 542 U.S. 507, 536 (2004) (plurality opinion). *The typical remedy for such detention is, of course,* release. See, e.g., *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody"). *Id* at 693.

83. This has been applied by the NY federal of cases cited above. See also, *Tumba Huamani v. Francis*, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025) (granting habeas; ordering immediate release).

84. Petitioner therefore seeks immediate habeas relief that is effective now, including release absent proof of lawful arrest authority and a contemporaneous, individualized custody determination.

85. Respondents will likely argue that Petitioner can seek redress through an immigration-judge bond proceeding. Federal courts has repeatedly rejected that concept, finding that the problem is the absence of a valid initial custody determination and other defects at the time of detention. *Kelly* explains that bond is a redetermination mechanism and does not replace ICE's obligation to properly make the initial custody decision. *Kelly,* 2025 WL 2381591, at 3. *Gopie* likewise treats the initial-custody defect as dispositive and grants the writ

86. Accordingly, Petitioner seeks effective relief now: release unless and until Respondents can demonstrate lawful arrest authority and a contemporaneous individualized custody

determination supported by documentation.

### G.  The Court Should Order Immediate Production Of Petitioner and Immediate Production Of The DHS Administrative Record (A-File) And Arrest &  Custody Documents

87. ICE agents will not give the Petitioner copies of any relevant detention documents that are required for him to prosecute this request for liberty. ICE's failure to produce basic custody documentation makes meaningful habeas review impossible.

88. The Court should order immediate production of the Petitioner before this Court, and of the A-file and all materials bearing on arrest authority, custody determination, and transfer.

## CLAIMS FOR RELIEF

### CLAIM ONE

### Unlawful Warrantless Seizure And Arrest In Violation Of The Fourth Amendment And 8 U.S.C. § 1357(A)(2)

89. As demonstrated above, the Fourth Amendment applies to civil immigration arrests in the interior of the United States. Warrantless civil immigration arrests are strictly limited, including by 8 U.S.C. § 1357(a)(2), which permits warrantless arrest only when statutory prerequisites are satisfied, including probable cause and the likelihood of escape.

90. Here, ICE arrested Petitioner, presented no warrant, articulated no probable cause, and provided no lawful basis for seizure. Petitioner's arrest was therefore unreasonable under the Fourth Amendment and ultra vires as a matter of statutory authority.

91. Because Petitioner's initial seizure was unlawful, his resulting custody is unlawful, and habeas relief is warranted to end an ongoing, unconstitutional deprivation of liberty.

## CLAIM TWO

### Detention Without A Contemporaneous, Individualized Custody Determination Violates The Due Process Clause Of The Fifth Amendment And 8 U.S.C. § 1226(A) And Implementing Regulations

92. Section 1226(a) authorizes discretionary detention or release pending removal decisions. Because the government possesses broad discretion to decide whether to detain, due process requires procedures that constrain arbitrary detention and ensure that discretion is actually exercised through an individualized assessment. See *Lopez Benitez v. Francis*, (explaining that due process must account for the government's wide discretion to arrest and detain under §1226(a)). *Id.*

93.    The governing regulatory scheme requires a prompt custody determination following arrest. ICE must decide—based on individualized facts—whether detention is necessary and whether release conditions can reasonably assure appearance and safety.

94.    Respondents cannot lawfully recharacterize Petitioner's interior as mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2)(A) governs mandatory detention of certain noncitizens "seeking admission"—i.e., the statutory framework for inspection and admission—whereas § 1226(a) governs discretionary detention of noncitizens already present in the United States pending removal proceedings.

95. In *Lopez Benitez v. Francis*, Judge Ho explained that § 1225(b)(2)(A) "requires mandatory detention of certain noncitizens' seeking admission' to the country," while § 1226(a) supplies "discretionary authority to detain other noncitizens who are 'already in the country.'" *Id* at 4.

## CLAIM THREE

### Failure To Follow Mandatory Detention Regulations And Procedures Renders Custody Unlawful Under *Accardi*

96. Under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), when an agency fails to follow its

own binding regulations intended to protect individual rights, its action is unlawful.

97. The immigration detention scheme contains mandatory procedural protections for arrest

processing and custody determinations. Where ICE fails to comply with those procedures—

especially in the immediate aftermath of a warrantless arrest—continued detention is unlawful

and habeas relief is warranted.

98. New York federal judges have repeatedly granted habeas relief and ordered immediate

release when DHS/ICE's process is defective, and the government cannot show lawful

custody authority and meaningful process. See, e.g., Chipantiza-Sisalema v. Francis, 2025 WL 1927931

(S.D.N.Y. July 13, 2025) (ordering immediate release); Valdez v. Joyce, 2025

W 1707737 (S.D.N.Y. June 18, 2025) (ordering immediate release).


## CLAIM FOUR

**Exhaustion Is Not Required—and Is Constitutionally Unavailable—Where DHS Invokes Matter of Jajure Hurtado and 8 U.S.C. § 1225(b) to Foreclose Any Bond Authority; In Such Cases, Immediate Release Is the Only Meaningful Habeas Remedy**

99. **Petitioner is an Indian national who entered the United States in 2024, has no**

**criminal history, and lived peacefully in the United States before his arrest on**

**February 14, 2026.**

100.    DHS nevertheless has classified him as subject to mandatory detention under 8

U.S.C. § 1225(b)(2) based solely on the manner of his entry, notwithstanding the absence

of any prior immigration enforcement history and the issuance of a Notice to Appear

placing him in standard § 1229a proceedings with a master hearing scheduled for March

2026.

101.    In materially indistinguishable circumstances, the Southern District of New York has

repeatedly rejected DHS's attempt to invoke § 1225(b) to justify prolonged detention of long-present noncitizens and has held that such detention is unlawful and unconstitutional from its inception.

102.    In *Rodriguez-Acurio v. Almodovar*, the court held that DHS's use of § 1225(b)(2) to detain a noncitizen who had been living in the United States for years was contrary to the statutory scheme and incompatible with due process, emphasizing that § 1225(b) is a limited screening provision that cannot be transformed into a sweeping mandatory-detention authority for individuals already inside the country and placed into removal proceedings. No. 25-CV-6065 (NJC), 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025). The court further explained that where ICE detains under the wrong statute and fails to provide the individualized custody determination required by § 1226(a), the detention is unlawful at the moment it begins and violates due process.

103.    Crucially for habeas relief, New Jersey courts have made clear that a belated bond hearing is not a meaningful remedy for detention that was unlawful from inception. In *Rodriguez-Acurio*, the court rejected the government's request for a remand for a bond hearing, holding that such relief would not cure the completed constitutional violation and would be futile in light of the BIA's 2025 decision in *Matter of Yajure-Hurtado*, which the government itself invokes to argue that Immigration Judges lack authority to grant bond to individuals detained under § 1225(b). Because *Yajure-Hurtado* is binding on Immigration Judges, ordering a bond hearing would offer only illusory relief while leaving the unconstitutional detention intact. *Id.*

104.    The same reasoning applies here. DHS simultaneously asserts that Petitioner is mandatorily detained under § 1225(b) and that Immigration Judges lack bond authority under *Yajure-Hurtado*. Under NJ precedent, a federal court need not—and should not—

order a futile administrative proceeding that the government contends is unavailable as a matter of law. Where the government's own legal position forecloses bond, habeas relief must be effective, not symbolic.

105.    Other 2025 EDNY decisions confirm that immediate release is the proper remedy in these circumstances. In *Artiga v. Genalo*, the court granted habeas relief and ordered release after concluding that DHS's reliance on § 1225(b) to detain a long-present noncitizen was unlawful and that post-hoc administrative process could not remedy the deprivation of liberty already inflicted. No. 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025).

106.    Likewise, in *Hyppolite v. Noem*, the court held that detention without the contemporaneous, individualized custody determination required by § 1226(a) violates due process and warrants release, not remand for further agency proceedings. No. 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

107.    This case fits squarely within that line of authority. Petitioner's decades-long residence, absence of any criminal history, lack of prior ICE contact, and placement into ordinary removal proceedings underscore that DHS's invocation of § 1225(b) is both statutorily improper and constitutionally infirm. Because Petitioner's detention was unlawful from the outset and because a bond hearing would be futile under the government's own interpretation of *Yajure-Hurtado*, the only meaningful habeas remedy is immediate release under appropriate conditions. Even where exhaustion of administrative remedies may sometimes be treated as a prudential consideration rather than a jurisdictional bar, it is not appropriate in this case.

108.    Petitioner does not merely challenge a discretionary custody determination or seek review of an immigration judge's weighing of bond factors; rather, Petitioner challenges the legality of the

seizure and detention itself and the government's statutory and constitutional authority to confine him at all.

109.     Where a petitioner raises such a challenge, exhaustion is routinely excused because administrative remedies are inadequate to prevent irreparable harm. See *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992); *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995). That principle applies with particular force where, as here, ICE has refused to provide contemporaneous custody documentation explaining when, why, or under what statutory authority the decision to detain was made, rendering any administrative route incapable of curing the unlawful deprivation of liberty. Requiring exhaustion under these circumstances would only prolong unconstitutional confinement and heighten the risk of transfer to a distant facility, thereby defeating this Court's jurisdiction and severely impairing access to counsel. See *Jennings v. Rodriguez*, 583 U.S. 281, 296–97 (2018). Where DHS takes the position that detention arises under § 1225(b), immigration judges are stripped of bond jurisdiction as a matter of law, and any requirement that a detainee exhaust administrative remedies becomes not merely futile but constitutionally incoherent.

110.     Where DHS invokes *Jajure Hurtado* and § 1225(b) to argue that an immigration judge lacks bond jurisdiction, *exhaustion of administrative remedies is excused because no administrative remedy exists*. In that posture, an order directing a bond hearing is not meaningful relief, because the agency asserts that the hearing cannot lawfully occur. Habeas relief must be *effective rather than illusory*, and federal courts may not discharge their constitutional duty by issuing orders that the government's own legal theory renders impossible to implement. See *Barco Mercado v. Frances*.

111.     Many judges in this district have therefore held that exhaustion is futile, unnecessary, and constitutionally unavailable where detainees challenge detention that is ultra vires, mandatory only by agency fiat, and categorically insulated from

immigration-court review. In such cases, the only remedy that meaningfully vindicates the Suspension Clause and the Due Process Clause is immediate release from custody. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Gonzalez v. Joyce,* 2025 WL (S.D.N.Y. 2025).

112.    Petitioner seeks relief from this Court because any months-long appeal to the Board of Immigration Appeals would be futile. A request for a bond hearing is likewise futile. The agency's position is clear: both immigration judges and the Board are bound by *Yajure-Hurtado*, and the policy underlying that position was issued in coordination with the Department of Justice, which exercises supervisory authority over the immigration courts and the BIA, including the power of the Attorney General to modify or overrule Board decisions. *See 8 C.F.R. § 1003.1(h).* It is therefore unsurprising that the Board has held that individuals like Petitioner are subject to mandatory detention under § 1225(b)(2)(A), rather than bond-eligible detention under § 1226(a), and that in identical habeas proceedings nationwide, EOIR and the Attorney General have consistently reaffirmed that position through briefing and oral argument.

113.    Finally, exhaustion is independently excused because neither immigration judges nor the BIA possess authority to adjudicate constitutional claims. See *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Singh v. U.S. Dep't of Homeland Sec*., 526 F.3d 72, 81 (2d Cir. 2008). Here, Petitioner asserts not only that Respondents are unlawfully detaining him without bond under an inapplicable statute, but also that such detention violates the Due Process Clause itself. If Respondents intended to lawfully detain Petitioner, they were required to do so pursuant to 8 U.S.C. § 1226(a) and its attendant regulations, which mandate notice, a custody determination, and an opportunity for release on bond. See 8 C.F.R. §§ 236.1(c), (d). Having failed to comply with those requirements, Respondents

may not now invoke exhaustion doctrine to shield an unlawful detention from judicial review.

## CLAIM FIVE

### Request for Order Directing Expedited Production of DHS Custody and Administrative Records

114.    Petitioner respectfully requests that the Court order Respondents to produce, on an expedited basis, the DHS and ICE custody, detention, and administrative records that form the legal and factual basis for Petitioner's arrest and continued detention. Production of these materials is necessary for Petitioner to prosecute his request for release from unlawful detention and for the Court to conduct meaningful habeas review under 28 U.S.C. § 2241.

115.    Petitioner challenges the legality of his seizure and detention, including the statutory authority asserted by DHS, the existence and validity of any custody determinations, and the denial of any bond or release authority. The documents reflecting those determinations are exclusively within the possession and control of the government. Absent their production, Petitioner is forced to litigate without access to the factual and legal predicates for his confinement, frustrating due process and undermining habeas corpus's core function as a safeguard against unlawful restraint.

116.    Petitioner therefore seeks an order directing Respondents to produce all DHS and ICE records relating to arrest and initial custody authority.

117.    Petitioner additionally seeks records concerning detention location and transfers, including ICE transfer orders, movement or transport logs, detention facility intake records, and inter-facility transfer documentation. Where applicable, Petitioner also seeks all credible fear or reasonable fear interview records and any records reflecting referral to, or denial of, fear screening. Finally, Petitioner seeks production of the complete administrative immigration file, including the A-File in paper and electronic form, all DHS and ICE database entries relating to Petitioner, and any policy memoranda relied upon in making the custody determinations at issue.

118.   Courts have repeatedly recognized that where a habeas petitioner challenges the legality of

immigration detention itself, production of DHS custody determinations and the administrative record

is essential to meaningful judicial review. See, e.g., *Barco Mercado v. Francis,* Gopie *v. Lyons***,**

*Gonzalez v. Joyce*, Ibid.

119.   Petitioner respectfully requests that the Court order Respondents to produce these materials within

thirty to seventy-two hours, as the Court deems appropriate given the ongoing deprivation of liberty.

Petitioner further requests that the Court make clear that failure to timely produce the ordered records

will result in appropriate consequences, including adverse inferences and, where the government cannot

substantiate a lawful basis for detention, Petitioner's immediate release.

## CLAIM SIX

### Request For Attorneys Fees Under The Equal Access To Justice Act

120.   Petitioner respectfully requests that this Court expressly preserve Petitioner's right to

seek an award of reasonable attorneys' fees and costs pursuant to the Equal Access to

Justice Act ("EAJA"), 28 U.S.C. § 2412, should Petitioner prevail in this habeas corpus

proceeding or obtain the relief requested herein through this Temporary Restraining Order

or subsequent order of the Court. EAJA provides that a prevailing party in a civil action

against the United States is entitled to an award of attorneys' fees and costs unless the

government's position was substantially justified or special circumstances would make an

award unjust. See 28 U.S.C. § 2412(d)(1)(A). Immigration habeas corpus proceedings

constitute "civil actions" within the meaning of EAJA, and federal courts in this District

have recognized that noncitizens who obtain relief from unlawful detention—including

release, termination of custody, or injunctive relief—qualify as prevailing parties for

purposes of EAJA where the government's conduct is not substantially justified.

121.    Here, Petitioner has been subjected to an unlawful seizure and detention without statutory authority and in violation of the Due Process Clause of the Fifth Amendment. The government's actions necessitated the immediate filing of this emergency habeas petition and application for a Temporary Restraining Order to prevent irreparable harm, including continued unlawful detention and the risk of transfer beyond this Court's jurisdiction. Under these circumstances, the government's position lacks substantial justification, and Petitioner should not bear the financial burden of vindicating fundamental constitutional rights.

122.    Accordingly, Petitioner respectfully requests that this Court's Temporary Restraining Order expressly provide that nothing in the Court's order shall be construed to waive or limit Petitioner's right to seek attorneys' fees and costs under EAJA, and that Petitioner may move for such fees upon prevailing in this action or obtaining the relief sought, including release from custody or other injunctive relief ordered by the Court.

### Request For Relief

WHEREFORE, Petitioner respectfully requests that this Court issue an order to show cause and temporary restraining order prohibiting respondents

a)  from transferring petitioner out of this district and requiring respondents to identify petitioner's precise location immediately;

b)  grant the writ of habeas corpus and order Petitioner's immediate release, or,

c)  at minimum, order Respondents to conduct a lawful, contemporaneous custody determination within 24–48 hours supported by documentation showing lawful arrest authority and individualized deliberation, and order release if Respondents cannot make that showing;

d)  order Respondents to produce Petitioner forthwith and

e)  order to produce all DHS and ICE custody, detention, and administrative records relating to Petitioner within forty-eight (48) hours of this Order, and failure to do so shall result in appropriate relief,

f)  grant such other relief as the Court deems just and proper.

Respectfully submitted,

*Peter Kapitonov*

Peter Kapitonov, Esq.

*s/ S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.
ON THE BRIEF

MUSA-OBREGON LAW P.C.

Musa-Obregon Law PC
Counsel for Petitioner
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000

February 12, 2026
New York, NY

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY
_____

JAGPREET JAGPREET SINGH

   *Petitioner*

                               EMERGENCY MOTION FOR ORDER TO SHOW
                               CAUSE AND TEMPORARY RESTRAINING ORDER

 KENNETH GENALO, NYC Director,
       Enforcement & Removal Operations,
       U.S. Immigration and Customs Enforcement;

JOHN TSOUKARIS, Acting Director, U.S.
       Immigration and Customs Enforcement;

KRISTI NOEM, Secretary of the U.S. Department
       of Homeland Security; and

PAMELA BONDI, Attorney General of the United States et al

       *Respondents.*
_____

<u>EMERGENCY MOTION FOR ORDER TO SHOW CAUSE
AND TEMPORARY RESTRAINING ORDER</u>

<u>Petitioner respectfully moves, on an emergency basis, for an Order to Show
Cause and Temporary Restraining Order:</u>

a) from transferring petitioner out of this district and requiring respondents to identify
petitioner's precise location immediately;

b) grant the writ of habeas corpus and order Petitioner's immediate release, or,

c) at minimum, order Respondents to conduct a lawful, contemporaneous custody determination
within 24–48 hours supported by documentation showing lawful arrest authority and
individualized deliberation, and order release if Respondents cannot make that showing and

d) order Respondents to produce Petitioner forthwith and

e) to produce the DHS administrative file (A-file) and all arrest/custody and transfer records
immediately;

f) order to produce all DHS and ICE custody, detention, and administrative records
relating to Petitioner within forty-eight (48) hours of this Order, and failure to do so
shall result in appropriate relief,

g)  grant such other relief as the Court deems just and proper.

## STANDARD FOR EMERGENCY RELIEF

A temporary restraining order and preliminary injunction are warranted where Petitioner shows likelihood of success on the merits, irreparable harm, a balance of equities in his favor, and that relief serves the public interest.

## IRREPARABLE HARM

Petitioner suffers irreparable harm each day he remains confined without lawful authority and without the constitutionally required process. The Second Circuit recognizes that the loss of liberty constitutes irreparable injury as a matter of law. Petitioner also faces the immediate risk of transfer which would frustrate counsel's access and impair the Court's ability to grant effective habeas relief.

## LIKELIHOOD OF SUCCESS

Petitioner is likely to succeed because the record currently reflects a warrantless arrest with no articulated basis and continued detention without any contemporaneous individualized custody determination. New York federal judges have repeatedly granted habeas relief and ordered immediate release when ICE's detention process is defective, and the Government cannot show lawful individualized decision-making. See *Lopez Benitez,* 2025 WL 2371588; *Kelly,* 2025 WL 2381591; *Valdez,* 2025 WL 1707737; *Chipantiza-Sisalema*, 2025 WL 1927931; *Gonzalez,* 2025 WL 2961626; *Tumba Huamani,* 2025 WL 3079014; *Huang v. Almodovar*, No. 25 Civ. 9346, 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025).

## BALANCE OF EQUITIES AND THE PUBLIC INTEREST

The equities overwhelmingly favor preventing unconstitutional detention. The public interest is not served by detaining individuals without lawful process and statutory compliance, and it is served by enforcing constitutional and statutory limits on civil immigration enforcement.

## CONCLUSION

For the foregoing reasons, the Court should grant the emergency Order to Show Cause and a Temporary Restraining Order. and grant the writ, including ordering immediate release or, at a minimum, compelling a lawful custody determination within 24–48 hours supported by documentary proof and ordering release.

Respectfully submitted,


*/s/ Peter Kapitonov*

Peter Kapitonov, Esq.

_s/ S. Michael Musa-Obregon_

S. Michael Musa-Obregon, Esq.
ON THE BRIEF

MUSA-OBREGON LAW P.C.                                    February 14, 2026
michael@musa-obregon.com                                New York, NY
718-803-1000

VERIFICATION BY SOMEONE ACTING ON PETITIONER'S
BEHALF PURSUANT TO 28 U.S.C.§ 2242

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have received this information from staff members at law firms, the office file, investigations of counsel, and from the Petitioner, who has granted his lawyers permission to discuss the events described in this Petition with his family. On the basis of this understanding, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

| Dated: February 14, 2026 | BY: |
|---|---|
| | /s/ Peter Kapitonov |
| | Peter Kapitonov, Esq. |
| | S. Michael Musa-Obregon |
| | S. Michael Musa-Obregon |
| | On the Brief |

<u>Certificate Of Service</u>

I certify that on February 14, 2026, I caused the foregoing Petition, Emergency Motion,

and Order to Show Cause to be served by electronic mail and/or overnight service on

the United States Attorney's Office for the District of New Jersey, Civil Division, and

by electronic mail and/or overnight service on counsel for Respondents, and I further

caused service on Respondents in their official capacities via the U.S. Attorney as

permitted by applicable rules.


*/s/ Peter Kapitonov*

Peter Kapitonov, Esq.


*/s/ S. Michael Musa-Obregon*
S. Michael Musa Obregon, Esq.
On the Brief

MUSA-OBREGON LAW P.C.
michael@musa-obregon.com

Appendix A

Martinez v. Hyde, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); Bautista v.
Santacruz, No. 25-cv-01873, 2025 WL 2670875 (C.D. Cal. July 28, 2025); Gonzalez v.
Noem, No. 25-cv-02054, 2025 WL 2633187 (C.D. Cal. Aug. 13, 2025); Lopez Benitez v.
Francis, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Dos Santos v.
Noem, No. 25-cv-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Arrazola-Gonzalez v.
Noem, No. 25-cv-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Maldonado v. Olson,
No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Romero v. Hyde, No. 25-
11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Samb v. Joyce, No. 25 Civ. 6373, 2025
WL 2398831 (S.D.N.Y. Aug. 19, 2025); Ramirez Clavijo v. Kaiser, No. 25-cv-06248, 2025
WL 2419263 (N.D. Cal. Aug. 21, 2025); Quinonez Mercado v. Dep't Homeland Sec., No.
25-cv-12066, 2025 WL 2430423 (D. Mass. Aug. 22, 2025); Leal-Hernandez v. Noem, No.
25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Kostak v. Trump, No. 25-1093,
2025 WL 2472136 (W.D. La. Aug. 27, 2025); Diaz Diaz v. Mattivelo, No. 25-cv-12226,
2025 WL 2457610 (D. Mass. Aug. 27, 2025); Lopez-Campos v. Raycraft, No. 25-cv12486,
2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Francisco T. v. Bondi, No. 25-CV-03219,
2025 WL 2629839 (D. Minn. Aug. 29, 2025); Chogllo Chafla v. Scott, No. 25-cv-00437,
2025 WL 2531027 (D. Me. Sept. 2, 2025); Salvador v. Bondi, No. 25-cv-07946, 2025 WL
2995055 (C.D. Cal. Sept. 2, 2025); Hernandez Nieves v. Kaiser, No. 25-cv-06921, 2025 WL
2533110 (N.D. Cal. Sept. 3, 2025); Garcia v. Noem, No. 25-cv02180, 2025 WL 2549431
(S.D. Cal. Sept. 3, 2025); Doe v. Moniz, No. 25-cv-12094, 2025 WL 2576819 (D. Mass.
Sept. 5, 2025); Mosqueda v. Noem, No. 25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8,
2025); Jimenez v. FCI Berlin, Warden, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8,
2025); Guzman v. Andrews, No. 25-cv-01015, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025);
Sampiao v. Hyde, No. 25-cv11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); Pizzaro
Reyes v. Raycraft, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025);
Hernandez Marcelo v. Trump, No. 25-cv-00094, 2025 WL 2741230 (S.D. Iowa Sept. 10,
2025); Lopez Santos v. Noem, No. 25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11,
2025); Salcedo Aceros v. Kaiser, No. 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12,
2025); Munoz Materano v. Arteta, No. 25 Civ. 6137, 2025 WL 2630826 (S.D.N.Y. Sept. 12,
2025); Pablo Sequen v. Kaiser, No. 25-cv-06487, 2025 WL 2650637 (N.D. Cal. Sept. 16,
2025); Garcia Cortes v. Noem, No. 25-cv02677, 2025 WL 2652880 (D. Colo. Sept. 16,
2025); Vazquez v. Feeley, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025);
Salazar v. Dedos, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); Oliveros v.
Kaiser, No. 25-cv-07117, 2025 WL 2677125 (N.D. Cal. Sept. 18, 2025); Castellanos v.
Kaiser, No. 25-cv-07962, 2025 WL 2689853 (N.D. Cal. Sept. 18, 2025); Barrera v. Tindall,
No. 25-cv541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); Chiliquinga Yumbillo v.
Stamper, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); Hasan v. Crawford,
No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); Singh v. Lewis, No. 25-cv-96,
2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); Chogllo Chafla v. Scott, No. 25-cv-00437,
2025 WL 2688541 (D. Me. Sept. 22, 2025); Lepe v. Andrews, No. 25-cv01163, 2025 WL
2716910 (E.D. Cal. Sept. 23, 2025); Giron Reyes v. Lyons, No. C25-4048, 2025 WL
2712427 (N.D. Iowa Sept. 23, 2025); Barrajas v. Noem, No. 25-cv-00322, 2025 WL
2717650 (S.D. Iowa Sept. 23, 2025); Roman v. Noem, No. 25-cv-01684, 2025 WL 2710211
(D. Nev. Sept. 23, 2025); Roa v. Albarran, No. 25-cv-07802, 2025 WL 2732923 (N.D. Cal.

Sept. 25, 2025); Lopez v. Hardin, No. 25-cv-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); Valencia Zapata v. Kaiser, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); Zumba v. Bondi, No. 25-cv-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); Inlago Tocagon v. Moniz, No. 25-cv-12453, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); Romero-Nolasco v. McDonald, No. 25-cv-12492, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); Chang Barrios v. Shepley, No. 25-cv-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); J.U. v. Maldonado, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); Quispe v. Crawford, No. 25-cv-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); Flores v. Noem, No. 25-cv-02490, 2025 WL 3050062 (C.D. Cal. Sept. 29, 2025); Helbrum v. Williams, No. 25-cv-00349, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025); Chiliquinga Yumbillo v. Stamper, No. 25-cv-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); Quispe Ardiles v. Noem, No. 25-cv-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); Rodriguez v. Bostock, No. 25-cv-05240, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); Belsai D.S. v. Bondi, No. 25-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); Rocha v. Hyde, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); Chanaguano Caiza v. Scott, No. 25-cv-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); Casun v. Hyde, No. 25-cv-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); Guzman Alfaro v. Wamsley, No. 25-cv01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); Echevarria v. Bondi, No. CV-25-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); Pelico v. Kaiser, No. 25-cv-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); Patel v. Tindall, No. 25-cv-373, 2025 WL 2823607 (W.D. Ky. Oct. 3, 2025); Guerrero Orellana v. Moniz, No. 25-cv-12664, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); Elias Escobar v. Hyde, No. 25-cv12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); Pop v. Noem, No. 25-cv-02589, 2025 WL 3050095 (C.D. Cal. Oct. 3, 2025); Artiga v. Genalo, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); Hyppolite v. Noem, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); Cumes v. Moniz, No. 25cv-12514, 2025 WL 3197637 (D. Mass. Oct. 6, 2025); S.D.B.B. v. Johnson, No. 25-cv-882, 2025 WL 2845170 (M.D.N.C. Oct. 7, 2025); Buenrostro-Mendez v. Bondi, No. H-25-3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025); Ledesma Gonzalez v. Bostock, No. 25-cv-01404, 2025 WL 2841574 (W.D. Wash. Oct. 7, 2025); B.D.V.S. v. Forestal, No. 25-cv-01968, 2025 WL 2855743 (S.D. Ind. Oct. 8, 2025); A.A. v. Olson, No. 25-3381, 2025 WL 2886729 (D. Minn. Oct. 8, 2025); Covarrubias v. Vergara, No. 25-CV-112, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025); Ortiz Donis v. Chestnut, No. 25-CV-01228, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Chavez v. Kaiser, No. 25-cv-06984, 2025 WL 2909526 (N.D. Cal. Oct. 9, 2025); Ballestros v. Noem, No. 25-cv-594, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); Rico-Tapia v. Smith, No. 25-00379, 2025 WL 2950089 (D. Haw. Oct. 10, 2025); Carlos v. Noem, No. 25-cv-01900, 2025 WL 2896156 (D. Nev. Oct. 10, 2025);

Castillo v. Lyons, No. 25-cv-16219, 2025 WL 2940990 (D.N.J. Oct. 10, 2025); Ortiz Martinez v. Wamsley, No. 25-cv-01822, 2025 WL 2899116 (W.D. Wash. Oct. 10, 2025); Alejandro v. Olson, No. 25-cv-02027, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); E.C. v. Noem, No. 25-cv01789, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Singh v. Lyons, No. 25-cv-01606, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); Merino v. Ripa, No. 25-23845, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025); Teyim v. Perry, No. 25-cv-01615, 2025 WL 2950183 (E.D. Va. Oct. 15, 2025); Mejia v. Woosley, No. 25-cv-82, 2025 WL 2933852 (W.D. Ky. Oct. 15, 2025); Pablo Sequen v. Albarran, No. 25-cv-06487, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr., No. 25-2453, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025); J.S.H.M v. Wofford, No. 25-CV-01309, 2025 WL 2938808 (E.D. Cal. Oct. 16, 2025); Piña v. Stamper, No. 25-cv-00509, 2025 WL

2939298 (D. Me. Oct. 16, 2025); Ochoa Ochoa v. Noem, No. 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); Hernandez Hernandez v. Crawford, No. 25-cv-01565, 2025 WL 2940702 (E.D. Va. Oct. 16, 2025); Contreras-Cervantes v. Raycraft, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025); Sanchez Alvarez v. Noem, No. 25-cv-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025); Sabi Polo v. Chestnut, No. 25-CV-01342, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025); Zamora v. Noem, No. 25-12750, 2025 WL 2958879 (D. Mass. Oct. 17, 2025); Menjivar Sanchez v. Wofford, No. 25-cv-01187, 2025 WL 2959274 (E.D. Cal. Oct. 17, 2025); Gutierrez v. Baltasar, No. 25-CV-2720, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); Benitez-Cornejo v. Cantu, No. CV-25-03672, 2025 WL 2992211 (D. Ariz. Oct. 17, 2025); Sandoval v. Raycraft, No. 25-cv12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025); Pacheco Mayen v. Raycraft, No. 25-cv-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025); Zecua v. Lyons, No. 25-cv-09794, 2025 WL 3150680 (C.D. Cal. Oct. 17, 2025); H.G.V.U. v. Smith, No. 25 CV 10931, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025); De La Cruz v. Noem, No. C25-150, 2025 WL 3110876 (N.D. Iowa Oct. 20, 2025); Da Silva v. Bondi, No. 25-cv12672, 2025 WL 2969163 (D. Mass. Oct. 21, 2025); Maldonado v. Baker, No. 25-3084, 2025 WL 2968042 (D. Md. Oct. 21, 2025); Miguel v. Noem, No. 25 C 11137, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); Casio-Mejia v. Raycraft, No. 25-cv-13032, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025); Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025); Santos Franco v. Raycraft, 37 No. 25-cv-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); Avila v. Bondi, No. 25-3741, 2025 WL 2976539 (D. Minn. Oct. 21, 2025); Buestan v. Chu, No. 25-16034, 2025 WL 2972252 (D.N.J. Oct. 21, 2025); Pineda v. Simon, No. 25-cv-01616, 2025 WL 2980729 (E.D. Va. Oct. 21, 2025); Garcia v. Wamsley, No. 25-cv-01980, 2025 WL 3208777 (W.D. Wash. Oct. 21, 2025); Bethancourt Soto v. Soto, No. 25-cv16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025); Garcia v. Noem, No. 25-cv-02771, 2025 WL 2986672 (C.D. Cal. Oct. 22, 2025); Loa Caballero v. Baltazar, No. 25-cv-03120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); Padilla v. Noem, No. 25 CV 12462, 2025 WL 2977742 (N.D. Ill. Oct. 22, 2025); Martinez v. Trump, No. 25-1445, 2025 WL 3124847 (W.D. La. Oct. 22, 2025); Lomeu v. Soto, No. 25cv16589, 2025 WL 2981296 (D.N.J. Oct. 23, 2025); Maldonado v. Cabezas, No. 25-13004, 2025 WL 2985256 (D.N.J. Oct. 23, 2025); Del Cid v. Bondi, No. 25-cv-00304, 2025 WL 2985150 (W.D. Pa. Oct. 23, 2025); Esquivel-Ipina v. Larose, No. 25-CV-2672, 2025 WL 2998361 (S.D. Cal. Oct. 24, 2025); Hernandez v. Baltazar, No. 25-cv03094, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); Patel v. Crowley, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); Aguilar Guerra v. Joyce, No. 25-cv-00534, 2025 WL 2999042 (D. Me. Oct. 24, 2025); Carmona v. Noem, No. 25-cv-1131, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025); Lapop v. Noem, No. 25-cv-016666, 2025 WL 2997507 (E.D. Va. Oct. 24, 2025); Helal v. Janecka, No. 25-cv-02650, 2025 WL 3190132 (C.D. Cal. Oct. 24, 2025); Arias Lopez v. Hyde, No. 25-12680, 2025 WL 3197806 (D. Mass. Oct. 24, 2025); J.A.C.P. v. Wofford, No. 25-cv-01354, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025); Lopez v. Warden, Otay Mesa Detention Ctr., No. 25-cv-2527, 2025 WL 3005346 (S.D. Cal. Oct. 27, 2025); Sanchez v. Olson, No. 25 CV 12453, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025); Garcia Picazo v. Sheehan, No. C25-4057, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025); Martinez-Elvir v. Olson, No. 25-CV-589, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025); Pineda Velasquez v. Noem, No. 25-3215, 2025 WL 3003684 (D. Md. Oct. 27, 2025); Gimenez Gonzalez v. Raycraft, No. 25-cv-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025); Tomas Elias v. Hyde, No. 25-cv-540, 2025 WL 3004437 (D.R.I. Oct. 27, 2025); Duarte Escobar v. Perry, No. 25cv758, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025);

Puerto-Hernandez v. Lynch, No. 25-cv1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); Patel v. Almodovar, No. 25-15345, 2025 WL 3012323 (D.N.J. Oct. 28, 2025); J.G.O. v. Francis, No. 25-CV-7233, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); Lopez v. Hardin, No. 25-cv-830, 2025 WL 3022245 (M.D. Fla. Oct. 29, 2025); Corona Diaz v. Olson, No. 25 CV 12141, 2025 WL 3022170 (N.D. Ill. Oct. 29, 2025); Garcia v. Noem, No. 25-cv-1271, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025); Rodriguez v. Noem, No. 25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); Ramirez Valverde v. Olson, No. 25-CV-1502, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025); Oliva v. Noem, No. 25-cv-1592, 2025 WL 3145712 (E.D. Va. Oct. 29, 2025); Martinez Lopez v. Larose, No. 25-cv-2717, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025); Singh v. Bondi, No. 25-cv-02101, 2025 WL 3029524 (S.D. Ind. Oct. 30, 2025); Ayala Amaya v. Bondi, No. 25-cv-16428, 2025 WL 3033880 (D.N.J. Oct. 30, 2025); L.A.E. v. Wamsley, No. 25-cv01975, 2025 WL 3037856 (D. Ore. Oct. 30, 2025); Astudillo v. Hyde, No. 25-551, 2025 WL 3035083 (D.R.I. Oct. 30, 2025); Lopez v. Sheehan, No. 25-CV-4052, 2025 WL 3046183 (N.D. Iowa Oct. 30, 2025); Escobar-Ruiz v. Raycraft, No. 25-cv-1232, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025); De Jesus Ramirez v. Noem, No. 25-cv-1261, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025); Ruiz Yarleque v. Noem, No. 25-cv-02836, 2025 WL 3043936 (C.D. Cal. Oct. 31, 2025); Arauz v. Baltazar, No. 25-cv-03260, 2025 WL 3041840 (D. Colo. Oct. 31, 2025); Valencia v. Noem, No. 25-cv12829, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025); Ponce v. Olson, No. 25-cv-13037, 2025 WL 3049785 (N.D. Ill. Oct. 31, 2025); Mejia v. Noem, No. 25-cv-1227, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025); Godinez-Lopez v. Ladwig, No. 25-cv-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); M.M. v. Wamsley, No. 25-cv-02074, 2025 WL 3053023 (W.D. Wash. Oct. 31, 2025); Garcia v. Noem, No. 25-cv00879, 2025 WL 3041895 (M.D. Fla. Oct. 31, 2025); J.A.M. v. Streeval, No. 25-cv-342, 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025); Flores v. Olson, No. 25 C 12916, 2025 WL 3063540 (N.D. Ill. Nov. 3, 2025); D.E.C.T. v. Noem, No. 25 C 12463, 2025 WL 3063650 (N.D. Ill. Nov. 3, 2025); Mboup v. Field Off. Dir. of N.J. Immigr. and Customs Enf't, No. 25-cv-16882, 2025 WL 3062791 (D.N.J. Nov. 3, 2025); Ramos v. Rokosky, No. 25cv15892, 2025 WL 3063588 (D.N.J. Nov. 3, 2025); Gonzalez v. Sterling, No. 25-CV-6080, 2025 WL 3145764 (N.D. Ga. Nov. 3, 2025); F.M.V. v. Wofford, No. 25-cv-01381, 2025 WL 3083934 (E.D. Cal. Nov. 4, 2025); Beltran v. Noem, No. 25cv2650, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025); Alonso v. Tindall, No. 25-cv-652, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025); Mendoza v. Noem, No. 25-cv-1252, 2025 WL 3077589 (W.D. Mich. Nov. 4, 2025); Tumba Huamani v. Francis, No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025); Alvarez Ortiz v. Freden, No. 25-CV-960, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025); R.E. v. Bondi, No. 25-CV-3946, 2025 WL 3146312 (D. Minn. Nov. 4, 2025); Arizmendi v. Noem, No. 25 C 13041, 2025 WL 3089107 (N.D. Ill. Nov. 5, 2025); Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec., No. 25-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025); Lopez v. Noem, No. 25-16890, 2025 WL 3101889 (D.N.J. Nov. 5, 2025); Sarmiento v. Perry, No. 25-cv-01644, 2025 WL 3091140 (E.D. Va. Nov. 5, 2025); Rojas Vargas v. Bondi, No. 25-cv-01699, 2025 WL 3251728 (W.D. Tex. Nov. 5, 2025); Mirzoev v. Olson, No. 25-cv-12969, 2025 WL 3101969 (N.D. Ill. Nov. 6, 2025); Pacheco Carrillo v. Noem, No. 25 C 12963, 2025 WL 3101993 (N.D. Ill. Nov. 6, 2025); Hernandez-Luna v. Noem, No. 25-cv-01818, 2025 WL 3102039 (D. Nev. Nov. 6, 2025); Vicens-Marquez v. Soto, No. 25-16906, 2025 WL 3097496 (D.N.J. Nov. 6, 2025); Romero Perez v. Francis, No. 25-cv-8112, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025); Garcia v. Noem, No. 25-cv-1712, 2025 WL 3111223 (E.D. Va. Nov. 6, 2025); Vasquez Carcamo v. Noem, No. 25-cv-00922, 2025 WL 3119263 (M.D. Fla. Nov. 7, 2025);

Arredondo v. Olson, No. 25-cv-12882, 2025 WL 3124149 (N.D. Ill. Nov. 7, 2025); Rios v. Noem, No. 25-cv-13180, 2025 WL 3124173 (N.D. Ill. Nov. 7, 2025); Morales-Martinez v. Raycraft, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025); Garcia v. Raycraft, No. 25-cv-1281, 2025 WL 3122800 (W.D. Mich. Nov. 7, 2025); Serrano v. Noem, No. 25-cv-1320, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025); Mendez v. Noem, No. 25-cv-02062, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cantero Garcia v. Wamsley, No. 25-cv-02092, 2025 WL 3123996 (W.D. Wash. Nov. 7, 2025); Cruz-Gamez v. Bondi, No. 25-cv-02154, 2025 WL 3130820 (W.D. Wash. Nov. 7, 2025); O.P.A.M. v. Wofford, No. 25-cv-01423, 2025 WL 3120552 (E.D. Cal. Nov. 7, 2025); Munoz v. Noem, No. 25-CV-1753, 2025 WL 3218241 (W.D. Tex. Nov. 7, 2025); Guartazaca Sumba v. Crowley, No. 25-CV-13034, 2025 WL 3126512 (N.D. Ill. Nov. 9, 2025); Perez v. Noem, No. 25 C 13442, 2025 WL 3140692 (N.D. Ill. Nov. 10, 2025); Pere-Gomez v. Warden, Camp E. Mont. Det. Facility, No. 25cv773, 2025 WL 3141103 (E.D. Va. Nov. 10, 2025); Otilio B.F. v. Andrews, No. 25-cv-01398, 2025 WL 3152480 (E.D. Cal. Nov. 11, 2025); Martinez v. Noem, No. 25-cv-12029, 2025 WL 3145103 (N.D. Ill. Nov. 11, 2025); Lopez Briseno v. Noem, No. 25 C 12092, 2025 WL 3145985 (N.D. Ill. Nov. 11, 2025); Sharan S. v. Chestnut, No. 25-cv-01427, 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025); Aquino v. LaRose, No. 25cv-2904, 2025 WL 3158676 (S.D. Cal. Nov. 12, 2025); Guevara v. Swearingen, No. 25 C 12549, 2025 WL 3158151 (N.D. Ill. Nov. 12, 2025); Vasquez Gonzalez v. Olson, No. 25 C 13162, 2025 WL 3158191 (N.D. Ill. Nov. 12, 2025); Diego v. Raycraft, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025); Alvarez v. Noem, No. 25-cv-1313, 2025 WL 3151948 (W.D. Mich. Nov. 12, 2025); Lucero v. Noem, No. 25cv-1295, 2025 WL 3165235 (W.D. Mich. Nov. 12, 2025); E.M. v. Noem, No. 25-cv-3975, 2025 WL 3157839 (D. Minn. Nov. 12, 2025); Guaman Naula v. Noem, No. 25-16792, 2025 WL 3158490 (D.N.J. Nov. 12, 2025); J.Y.L.C. v. Bostock, No. 25-cv-02083, 2025 WL 3169865 (D. Ore. Nov. 12, 2025); Quinapanta v. Bondi, No. 25-cv-795, 2025 WL 3157867 (W.D. Wis. Nov. 12, 2025); Marin v. Andrews, No. 25-cv01422, 2025 WL 3171484 (E.D. Cal. Nov. 13, 2025); Calel v. LaRose, No. 25-cv-02883, 2025 WL 3171898 (S.D. Cal. Nov. 13, 2025); Cabrera v. Noem, No. 25 C 12160, 2025 WL 3171288 (N.D. Ill. Nov. 13, 2025); Serrano v. Salazar, No. 25 C 13170, 2025 WL 3171354 (N.D. Ill. Nov. 13, 2025); Delgado Avila v. Crowley, No. 25-cv-00533, 2025 WL 3171175 (S.D. Ind. Nov. 13, 2025); Caguana-Caguana v. Moniz, No. 25-cv13142, 2025 WL 3171043 (D. Mass. Nov. 13, 2025); Anselmo v. Moniz, No. 25-cv-13309, 2025 WL 3171137 (D. Mass. Nov. 13, 2025); Singh v. Noem, No. 25-cv-1251, 2025 WL 3170855 (W.D. Mich. Nov. 13, 2025); Hernandez v. Noem, No. 25-cv-1307, 2025 WL 3170872 (W.D. Mich. Nov. 13, 2025); Lara v. Noem, No. 25-cv-1332, 2025 WL 3170876 (W.D. Mich. Nov. 13, 2025); Gonzalez v. Noem, No. 25-cv-1315, 2025 WL 3170879 (W.D. Mich. Nov. 13, 2025); Rueda Torres v. Francis, No. 25 Civ. 8408, 2025 WL 3168759 (S.D.N.Y. Nov. 13, 2025); Cantu-Cortes v. O'Neill, No. 25-cv-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); Ramandi v. Field Off. Dir., ICE ERO San Francisco, No. 25-CV-01462, 2025 WL 3182732 (E.D. Cal. Nov. 14, 2025); Barreno v. Baltasar, No. 25-cv-03017, 2025 WL 3190936 (D. Colo. Nov. 14, 2025); Villa v. Normand, No. 25-cv-89, 2025 WL 3188406 (S.D. Ga. Nov. 14, 2025); Rodriguez Loredo v. Forestal, No. 25 C 12758, 2025 WL 3187319 (N.D. Ill. Nov. 14, 2025); Quinonez v. Olson, No. 25 CV 13524, 2025 WL 3190598 (N.D. Ill. Nov. 14, 2025); Beltrand v. Mattos, No. 25-cv-01430, 2025 WL 3205283 (D. Nev. Nov. 14, 2025); Pu Sacvin v. Anda-Ybarra, No. 25-cv-01031, 2025 WL 3187432 (D.N.M. Nov. 14, 2025); Cuy Comes v. Deleon, No. 25 Civ. 9283, 2025 WL 3206491 (S.D.N.Y. Nov. 14, 2025); Chavez v. Dir. of Detroit Field Off., No. 25-cv-2061, 2025 WL 3187080 (N.D. Ohio

Nov. 14, 2025); Kashranov v. Jamison, No. 25-cv-05555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); Cruz Gutierrez v. Thompson, No. 25-4695, 2025 WL 3187521 (S.D. Tex. Nov. 14, 2025); Cardona-Lozano v. Noem, No. 25CV-1784, 2025 WL 3218244 (W.D. Tex. Nov. 14, 2025); Morillo v. Albarran, No. 25-cv-01533, 2025 WL 3190899 (E.D. Cal. Nov. 15, 2025); Faizyan v. Casey, No. 25-cv-02884, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); Aguilar v. Noem, No. 25 C 12731, 2025 WL 3204568 (N.D. Ill. Nov. 17, 2025); Soto-Garcia v. Olson, No. 25-cv-13736, 2025 WL 3204594 (N.D. Ill. Nov. 17, 2025); Ayala v. Olson, No. 25 C 13317, 2025 WL 3210398 (N.D. Ill. Nov. 17, 2025); Lara v. Olson, No. 25 C 13110, 2025 WL 3210403 (N.D. Ill. Nov. 17, 2025); Balderas v. Olson, No. 25 C 12749, 2025 WL 3210422 (N.D. Ill. Nov. 17, 2025); Garcia v. Olson, No. 25 C 13621, 2025 WL 3210425 (N.D. Ill. Nov. 17, 2025); Alvarez v. Olson, No. 25 C 13410, 2025 WL 3210461 (N.D. Ill. Nov. 17, 2025); Alarcon v. Moniz, No. 25-cv-13294, 2025 WL 3204553 (D. Mass. Nov. 17, 2025); Gonzalez v. Raycraft, No. 25-13502, 2025 WL 3218242 (E.D. Mich. Nov. 17, 2025); Orellana v. Noem, No. 25-cv-1333, 2025 WL 3198685 (W.D. Mich. Nov. 17, 2025); Cardona v. Unknown Party, No. 25-cv-1287, 2025 WL 3200682 (W.D. Mich. Nov. 17, 2025); Sevilla v. Noem, No. 25-cv-1325, 2025 WL 3200698 (W.D. Mich. Nov. 17, 2025); Guerra v. Noem, No. 25-cv-1341, 2025 WL 3204289 (W.D. Mich. Nov. 17, 2025); Escobar Salgado v. Mattos, No. 25-cv-01872, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); Sandoval v. Rokosky, No. 25-17229, 2025 WL 3204746 (D.N.J. Nov. 17, 2025); Yupangui v. Hale, No. 25-cv-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Castillo v. Wamsley, No. 25-cv-02172, 2025 WL 3204370 (W.D. Wash. Nov. 17, 2025); Diaz v. Albarran, No. 25-cv-09837, 2025 WL 3214972 (N.D. Cal. Nov. 18, 2025); Torres v. Bondi, No. 25-cv-02457, 2025 WL 3214773 (S.D. Cal. Nov. 18, 2025); Ruiz v. LaRose, No. 25-cv-02714, 2025 WL 3214975 (S.D. Cal. Nov. 18, 2025); Sanchez v. Noem, No. 25-CV-3068, 2025 WL 3214987 (S.D. Cal. Nov. 18, 2025); Perez v. Olson, No. 25 C 13731, 2025 WL 3213967 (N.D. Ill. Nov. 18, 2025); Lopez v. Olson, No. 25-cv-654, 2025 WL 3217036 (W.D. Ky. Nov. 18, 2025); Mendez v. Raycraft, No. 25-cv-1323, 2025 WL 3214100 (W.D. Mich. Nov. 18, 2025); Eshdavlatov v. Arnott, No. 25-cv-00844, 2025 WL 3217838 (W.D. Mo. Nov. 18, 2025); Rodriguez v. Arnott, No. 25-cv-00836, 2025 WL 3218553 (W.D. Mo. Nov. 18, 2025); Cornejo-Mejia v. Bernacke, No. 25-cv-02139, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Sarmiento Guerrero v. Noem, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025); Guzman Cardenas v. Almodovar, No. 25-CV-9169, 2025 WL 3215573 (S.D.N.Y. Nov. 18, 2025); Villegas ex. rel. Guzman Andujar v. Francis, No. 25-cv-09199, 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025); Demirel v. Fed. Det. Ctr. Philadelphia, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); Cortina v. Anda-Ybarra, No. 25-CV-00523, 2025 WL 3218682 (W.D. Tex. Nov. 18, 2025); Singh v. Andrews, No. 25-cv-01543, 2025 WL 3248059 (E.D. Cal. Nov. 19, 2025); W.V.S.M. v. Wofford, No. 25-cv01489, 2025 WL 3236521 (E.D. Cal. Nov. 19, 2025); Elias v. Knight, No. 25-cv-00594, 2025 WL 3228262 (D. Idaho Nov. 19, 2025); Esparza v. Knight, No. 25-cv-00601, 2025 WL 3228282 (D. Idaho Nov. 19, 2025); Rodriguez v. Knight, No. 25-cv-00600, 2025 WL 3228285 (D. Idaho Nov. 19, 2025); Cordoba v. Knight, No. 25-cv-00605, 2025 WL 3228945 (D. Idaho Nov. 19, 2025); Ibarra v. Knight, No. 25-cv-00597, 2025 WL 3228968 (D. Idaho Nov. 19, 2025); Arredondo v. Hollinshead, No. 25-cv-00609, 2025 WL 3228972 (D. Idaho Nov. 19, 2025); Esparza v. Hollinshead, No. 25-cv-00599, 2025 WL 3228974 (D. Idaho Nov. 19, 2025); Gonzalez v. Knight, No. 25-cv-00602, 2025 WL 3228975 (D. Idaho Nov. 19, 2025); Hernandez v. Bondi, No. 25-cv-00615, 2025 WL 3228976 (D. Idaho Nov. 19, 2025); Martinez v. Knight, No. 25-cv-00610, 2025 WL 3228987 (D. Idaho Nov. 19, 2025); Casarez

v. Thompson, No. 25-cv-00596, 2025 WL 3228988 (D. Idaho Nov. 19, 2025); Lopez v. Anderson, No. 25-cv-00621, 2025 WL 3228997 (D. Idaho Nov. 19, 2025); Camacho v. Hollinshead, No. 25-cv-00593, 2025 WL 3228998 (D. Idaho Nov. 19, 2025); Rangel v. Knight, No. 25-cv-00607, 2025 WL 3229000 (D. Idaho Nov. 19, 2025); Serrato v. Anderson, No. 25-cv-00603, 2025 WL 3229001 (D. Idaho Nov. 19, 2025); Elias v. Knight, No. 25-cv-00604, 2025 WL 3229013 (D. Idaho Nov. 19, 2025); Ramirez v. Noem, No. 25 C 13651, 2025 WL 3227341 (N.D. Ill. Nov. 19, 2025); Lobera v. Noem, No. 25 CV 13593, 2025 WL 3228984 (N.D. Ill. Nov. 19, 2025); Gonzalez v. Olson, No. 25 C 13439, 2025 WL 3237190 (N.D. Ill. Nov. 19, 2025); Del Villar v. Noem, No. 25-CV-00137, 2025 WL 3231630 (W.D. Ky. Nov. 19, 2025); Ibarra v. Noem, No. 25-cv-1335, 2025 WL 3223765 (W.D. Mich. Nov. 19, 2025); Ortiz v. Raycraft, No. 25-cv-1328, 2025 WL 3223771 (W.D. Mich. Nov. 19, 2025); Martinez v. Unknown Party, No. 25-cv-1298, 2025 WL 3223774 (W.D. Mich. Nov. 19, 2025); Pastor v. Raycraft, No. 25-cv-1301, 2025 WL 3223777 (W.D. Mich. Nov. 19, 2025); Hernandez Franco v. Raycraft, No. 25-cv-1274, 2025 WL 3223780 (W.D. Mich. Nov. 19, 2025); Orozco-Martinez v. Lynch, No. 25-cv-1353, 2025 WL 3223786 (W.D. Mich. Nov. 19, 2025); Francisco T. V. Bondi, No. 25-CV03219, 2025 WL 3236513 (D. Minn. Nov. 19, 2025); Mairena-Munguia v. Arnott, No. 25-cv-3318, 2025 WL 3229132 (W.D. Mo. Nov. 19, 2025); Ortiz v. Bernacke, No. 25-cv-01833, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Sales v. Mattos, No. 25-cv-01819, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Duran v. Bernacke, No. 25-cv-02105, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Perez v. Lyons, No. 25-cv-17186, 2025 WL 3238540 (D.N.J. Nov. 19, 2025); Ndiaye v. Jamison, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); Figueroa v. Hermosillo, No. 25-cv-02228, 2025 WL 3230466 (W.D. Wash. Nov. 19, 2025); Manzanarez v. Bondi, No. 25-cv-01536, 2025 WL 3247258 (E.D. Cal. Nov. 20, 2025); Flores v. Noem, No. 25-cv-03011, 2025 WL 3240807 (S.D. Cal. Nov. 20, 2025); Boffill v. Field Off. Dir., No. 25-cv-25179, 2025 WL 3246868 (S.D. Fla. Nov. 20, 2025); Rusu v. Noem, No. 25 C 13819, 2025 WL 3240911 (N.D. Ill. Nov. 20, 2025); Salinas v. Woosley, No. 25-cv-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); Curillo v. Noem, No. 25-cv-1340, 2025 WL 3235737 (W.D. Mich. Nov. 20, 2025); Beltran v. Raycraft, No. 25-cv1352, 2025 WL 3237429 (W.D. Mich. Nov. 20, 2025); Sanchez v. Noem, No. 25-cv-1361, 2025 WL 3237435 (W.D. Mich. Nov. 20, 2025); Melgar v. Noem, No. 25-cv-1377, 2025 WL 3240058 (W.D. Mich. Nov. 20, 2025); Cabrera-Cortes v. Knight, No. 25-cv-01976, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Sandhu v. Tsoukaris, No. 25-14607, 2025 WL 3240810 (D.N.J. Nov. 20, 2025); Lucero v. Soto, No. 2516737, 2025 WL 3240895 (D.N.J. Nov. 20, 2025); Sun v. Almodovar, No. 25-cv-9262, 2025 WL 3241268 (S.D.N.Y. Nov. 20, 2025); Escarcega v. Olson, No. CIV-25-1129, 2025 WL 3243438 (W.D. Okla. Nov. 20, 2025); Patel v. McShane, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); Plascencia v. Bondi, No. CV-25-04140, 2025 WL 3250914 (D. Ariz. Nov. 21, 2025); Padilla v. Bowen, No. 25-cv-10780, 2025 WL 3251368 (C.D. Cal. Nov. 21, 2025); Singh v. Bowen, No. 25-cv-03034, 2025 WL 3251437 (C.D. Cal. Nov. 21, 2025); Juarez v. Noem, No. 25-cv-02972, 2025 WL 3251658 (C.D. Cal. Nov. 21, 2025); Velasquez v. LaRose, No. 25-CV-3137, 2025 WL 3251373 (S.D. Cal. Nov. 21, 2025); Diaz-Villatoro v. LaRose, No. 25-CV-3087, 2025 WL 3251377 (S.D. Cal. Nov. 21, 2025); Santos v. LaRose, No. 25-cv-3009, 2025 WL 3251575 (S.D. Cal. Nov. 21, 2025); Marroquin v. LaRose, No. 25-cv-3013, 2025 WL 3251579 (S.D. Cal. Nov. 21, 2025); Lucas-Miguel v. LaRose, No. 25-cv-3022, 2025 WL 3251580 (S.D. Cal. Nov. 21, 2025); Garcia v. Raycraft, No. 25-cv-13407, 2025 WL 3252286 (E.D. Mich. Nov. 21, 2025); Delcid v. Noem, No. 25-cv-1366, 2025 WL 3251139 (W.D. Mich. Nov. 21, 2025); Oropeza v. Noem, No. 25-

cv-1343, 2025 WL 3251140 (W.D. Mich. Nov. 21, 2025); Delgado v. Noem, No. 25-cv-1249, 2025 WL 3251144 (W.D. Mich. Nov. 21, 2025); Velasquez-Gomez v. Soto, No. 25-17327, 2025 WL 3251443 (D.N.J. Nov. 21, 2025); Valerio v. Joyce, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025); Gomez v. Bondi, No. C25-2248, 2025 WL 3251157 (W.D. Wash. Nov. 21, 2025); Ramos v. Hermosillo, No. 25-cv-02273, 2025 WL 3251159 (W.D. Wash. Nov. 21, 2025); Padilla v. Galovich, No. 25-cv-863, 2025 WL 3251446 (W.D. Wis. Nov. 21, 2025).

Appendix B

Pipa-Aquise v. Bondi, No. 25-cv-01094, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025); Chavez v. Noem, No. 25-cv-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Vargas Lopez v. Trump, No. 25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); Cirrus Rojas v. Olson, No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); Sandoval v. Acuna, No. 25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); Oliveira v. Patterson, No. 25-cv-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); Mejia Olalde v. Noem, No. 25-cv-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); Altamirano Ramos v. Lyons, No. 25-cv09785, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); Cabanas v. Bondi, No. 25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); Valencia v. Chestnut, No. 25-cv-01550, 2025 WL 3205133 (E.D. Cal. Nov. 17, 2025); Alonzo v. Noem, No. 25-cv-01519, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025); De Andrade v. Patterson, No. 25-cv-01695, 2025 WL 3252707 (W.D. La. Nov. 21, 2025).