UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**JAGPREET JAGPREET SINGH**,

*Petitioner*,

v.

**JOHN TSOUKARIS**, *et al.*,

*Respondents*.

No. 26-cv-01531

ORDER

---

**THIS MATTER** comes before the Court by way of a Petition for Writ of Habeas Corpus, (ECF No. 1), Emergency Motion for Temporary Restraining Order, (ECF No. 2), and the Court's prior February 17, 2026 Order, (ECF No. 4); and

**WHEREAS**, Petitioner is a native of India who entered the United States on or about January 2, 2024 in California. (Pet., ECF No. 1 at ¶¶ 5, 10; ECF No. 6-1 at 23). At that time, he was detained by United States Border Patrol agents. (ECF No. 6-1 at 23). He was released from Border Patrol custody and provided with a Notice to Appear. (ECF No. 6-1 at 19, 23). Petitioner currently has a pending asylum application. (*Id.* at 14); and

**WHEREAS**, Immigration and Customs Enforcement ("ICE") agents detained Petitioner on February 14, 2026, in New York while he was driving home from work. (Pet., ECF No. 1 at ¶ 6). Following his arrest, Petitioner was detained at Delaney Hall Detention Facility in Newark, New Jersey, without access to counsel or the ability to make a phone call. (*Id.* at ¶¶ 17–18). After the Court entered an Order enjoining Respondents from transferring Petitioner outside the State of New Jersey on February 17, 2026, (ECF No. 3), ICE inexplicably nevertheless transferred Petitioner to the Metropolitan Detention Center in Brooklyn, New York on February 18, 2026 at

12:30 p.m. in direct violation of this Court's Order. (Gov't Resp., ECF No. 6 at 3); and

**WHEREAS**, according to documents provided by the Government, Petitioner has no criminal history. (*See* ECF No. 6-1 at 14). Additionally, Petitioner is not currently subject to a final order of removal. (Gov't Resp., ECF No. 6 at 2); and

**WHEREAS**, notwithstanding the foregoing and no final order of removal having been entered, ICE agents arrested and detained Petitioner on February 14, 2026, without providing him any bond hearing or other individualized custody determination following his detention; and

**WHEREAS,** on February 17, 2026, this Court ordered Respondents to file an expedited answer by February 19, 2026, at 12:00 p.m., identifying, among other things, the specific statutory or other legal authority for Petitioner's detention; the procedural due process afforded prior to detention; whether a final order of removal exists; any alleged changed circumstances justifying detention; whether Petitioner has received a bond hearing; and the current status of all related immigration proceedings; and

**WHEREAS,** Respondents filed an answer and letter[1] response on February 19, 2026, which they acknowledge is incomplete and does not fully respond to the Court's Order. (ECF No. 5 at 2). Additionally, Respondents acknowledge that the statutory arguments and facts in this case

---

[1] In the letter, (ECF No. 6), the U.S. Attorney's Office disclosed for the first time that ICE had transferred Petitioner outside of New Jersey on February 18, 2026 at approximately 12:30 p.m., notwithstanding this Court's prior Order enjoining removal from New Jersey which had been entered nearly 22 hours earlier while Petitioner was present in this District, (Order, ECF No. 3 (entered February 17, 2026)). While this Court has, for months, expressed alarming concerns with respect to Respondents' failure to abide by judicial orders, it is even more so alarmed that it continues to occur given that the U.S. Attorney's Office just last week admitted that it is aware that ICE has repeatedly violated judicial orders more than fifty (50) times in just the past sixty (60) days. *See Kumar v. Soto*, No. 26-00777, ECF No. 21 (dated 2/13/26). Yet here again, there is a blatant violation of a no removal order. The Court will address the Respondents' conduct in a separate forthcoming order.

are materially identical to those that the Court has already rejected in *Bethancourt Soto v. Soto*, ____ F. Supp. 3d ____, No. 25-16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025) and other cases. (*Id.* at 1, 3); and

**WHEREAS**, it appears to the Court, at a minimum, that Petitioner is being unlawfully detained under Respondents' repeated invocation of 8 U.S.C. § 1225 because, as set forth in *Bethancourt Soto*, Petitioner was apprehended inside the United States after residing here for an extended period, and therefore he should have been detained under 8 U.S.C. § 1226, which requires an opportunity to seek bond;[2] and

**WHEREAS**, the Court notes that federal courts have in near unanimity[3] similarly rejected

---

[2] The Court notes that 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction over Petitioner's challenge to his *continued* detention because the challenge is collateral to "the removal process," and is not "inextricably linked" to any removal action. *See Khalil v. President, United States*, No. 25-2162, 2026 WL 111933, at *9 (3d Cir. Jan. 15, 2026); *Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("[W]hether a bond hearing is required prior to detention . . . is collateral to the removal process." (cleaned up)); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (same); *see also Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (explaining that § 1252(b)(9) did not bar consideration of bond related issues under 8 U.S.C. §§ 1225 and 1226 because the noncitizens "[were] not asking for review of an order of removal, [were] not challenging the decision to detain them in the first place or to seek removal, and [were] not . . . challenging any part of the process by which their removability [was to] be determined" (cleaned up)). Here, the Petitioner's challenge to his continued detention "does not argue that his confinement is unlawful because the Government's removal action is itself invalid." *Kourouma*, 2026 WL 120208, at *3. Rather, the claim "challenges the Government's authority to detain him without a bond hearing," which is "not . . . decided through the [petition for review] process, nor is it capable of review once the immigration courts issue a final order on removal." *Id*. (cleaned up); *see also Khalil*, 2026 WL 111933, at *12 (explaining that challenges to "the length of confinement without a bond hearing . . . [do] not get channeled into the . . . [petition for review] process").

[3] The Court is aware of the Fifth Circuit's recent decision reaching a contrary conclusion. That decision, however, is not binding on this Court, and the Court is unpersuaded by its reasoning for many of the reasons articulated in Judge Douglas's dissent, including that the majority's interpretation risks rendering significant portions of the statutory scheme superfluous and internally inconsistent. *See Buenrostro-Mendez v. Bondi*, _____ F.4th _____, Nos. 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

the Government's position in approximately 300 cases to date, a number which climbs with every passing day. *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. 2025) (noting "the law is clear" and that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here. Those decisions are plainly correct."); *see also* App., *Demirel,* 2025 WL 3218243 (ECF No. 11-1) (collecting cases); and

**WHEREAS**, the basis for the Petitioner's continued "detention [was] blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate[ly] release him and enjoin the Government from further similar transgressions," *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 366, 371–73 (S.D.N.Y. 2019) ("[T]he Supreme Court has repeatedly upheld prisoners' rights to challenge the constitutionality of their detentions, and allow[ed] courts to implement corrective remedies, regardless of whether there were other bases for the petitioners to be subsequently detained."); the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification presented mid-litigation, as doing so would give the Government a free pass to violate a person's statutory and constitutional rights first and search for authority later, *see, e.g.*, *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted *post-hoc*, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court "cannot credit Respondents' new position as to the basis for . . . detention, which was adopted *post hoc* and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing

4

the impropriety of allowing the government to proceed on "*post hoc* justifications for detention"); *cf. Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process . . . not a *post hoc* rationalization, or agency counsel's in-court reasoning."); therefore

**IT IS,** on this 19th day of February, 2026,

**ORDERED** that Petitioner's § 2241 Petition is **GRANTED**; Respondents shall **on this date** IMMEDIATELY RETURN PETITIONER TO NEW JERSEY AND IMMEDIATELY RELEASE Petitioner under the same conditions, if any, that existed prior to his re-detention; and it is further

**ORDERED** that the Motion for Temporary Restraining Order, (ECF No. 2), is **DENIED AS MOOT**; and it is further

**ORDERED** that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's detention; and it is further

**ORDERED** that Respondents shall file a letter on the docket confirming the date and time of Petitioner's return to New Jersey and release in New Jersey; and it is further

**ORDERED** that Respondents are **PERMANENTLY ENJOINED** from rearresting or otherwise detaining Petitioner under § 1225, which this Court has found inapplicable to him; and it is further

**ORDERED** that Respondents shall not arrest, detain, or otherwise take Petitioner into

custody under 8 U.S.C. § 1226(a) for a period of fourteen (14) days following his release, so as to ensure full effectuation of this Court's judgment and to prevent circumvention of the relief granted; and it is further

**ORDERED** that any future detention of Petitioner must comply with all statutory and constitutional requirements, including the identification of a lawful statutory basis for detention and the provision of adequate procedural and substantive due process; and it is further

**ORDERED** that, to the extent that Respondents seek to re-arrest or otherwise re-detain Petitioner under any statutory authority, including but not limited to §§ 1225 or 1226, this Court shall retain jurisdiction over the matter and Petitioner may move to reopen these proceedings before this Court without the need to file a new habeas petition; and it is further

**ORDERED** that the hearing previously scheduled for February 19, 2026, at 3:00 p.m. is **CANCELED**.

*Christine A. O'Hearn*
_____
**CHRISTINE P. O'HEARN**
**United States District Judge**